O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,           )  Case No. CR 11-00922 (B) DDP (16)
                                    )
                Plaintiff,          )  **ORDER RE: MOTIONS IN LIMINE TO**
                                    )  **EXCLUDE TESTIMONY OF EXPERT**
        v.                          )  **WITNESS DONALD SULLIVAN**
                                    )
                                    )  [Dkt. Nos. 772]
PHIC LIM,                           )
                                    )
                Defendant.          )
_____       )

    Defendants Yoon and Lim have submitted motions in limine to
exclude the testimony of government witness Donald Sullivan, an
expert on pharmacy practices.  The Government plans to call Dr.
Sullivan to testify about what is ordinary pharmacy practice and
whether certain practices deviate from the norm.  (Dkt. No. 772,
Ex. A.)  Defendants argue that (1) Sullivan's testimony is
irrelevant to the question of Defendants' state of mind; (2)
Sullivan's proposed testimony, as to accepted indicators in the
pharmacy industry that would alert a pharmacist to the possibility
that a prescription might not be for a legitimate medical purpose,
lacks scientific foundation and should be excluded under Federal

1  Rule of Evidence 702; and (3) Sullivan's proposed testimony as to

2  standards in the pharmacy industry should be excluded because no

3  "standard of care" can be relevant to criminal liability.

4      The Court rejects Defendants' Rule 702 argument. *Some* expert

5  testimony "rests upon scientific foundations, the reliability of

6  which will be at issue in some cases." Kumho Tire Co. v.

7  Carmichael, 526 U.S. 137, 150 (1999). But an expert may be

8  qualified by "knowledge, skill, experience, training, or

9  education," F.R.E. 702, and in many cases "the relevant reliability

10  concerns may focus upon personal knowledge or experience," rather

11  than scientific proof. Kumho Tire, 526 U.S. at 150. Defendants

12  have not challenged Dr. Sullivan's personal knowledge or

13  experience, and the Court finds no reason to doubt that Dr.

14  Sullivan is qualified to speak on the subject of customary and

15  appropriate pharmacy practices.

16      As to the relevance of Dr. Sullivan's testimony regarding

17  standards and practices in the pharmacy industry, the Government

18  cites United States v. Feingold for the proposition that "only

19  after assessing the standards to which medical professionals

20  generally hold themselves is it possible to evaluate whether a

21  practitioner's conduct has deviated so far from the 'usual course

22  of professional practice' that his actions become criminal." 454

23  F.3d 1001, 1007 (9th Cir. 2006).

24      Feingold, however, also cautions that "a violation of the

25  standard of care *alone* is insufficient to support [a] criminal

26  conviction," id., and that "the district court must ensure that the

27  benchmark for criminal liability is the higher showing that the

28

1 | practitioner intentionally has distributed controlled substances."
2 | Id. at 1010.

3 |     The Court therefore takes the following from Feingold: first,
4 | evidence of the general practice of pharmacists, and what kinds of
5 | acts would substantially deviate from that practice, is relevant
6 | because it is circumstantial evidence that the pharmacists knew
7 | that they were engaging in criminal acts.  But second, the Court is
8 | obligated to ensure that such testimony does not "impermissibly
9 | lower the standard for criminal liability," id., by implying that a
10 | failure to adhere to commonly-accepted practices, or even practices
11 | promulgated by a regulatory agency or professional board, is
12 | grounds for criminal liability.

13 |     Therefore, **the motion is granted in part**. Dr. Sullivan may
14 | testify as an expert on what practices are customary and common in
15 | the industry, based on his experience and expertise.  He may also
16 | testify as to the kinds of practices or indicators would be seen in
17 | the pharmacy industry as unusual, not common practice, or not
18 | customary.

19 |     However, he may not testify as to what he would have done in
20 | Defendants' place, or to what a "reasonable pharmacist" would have
21 | done in Defendants' place.  Allowing such testimony would run the
22 | risk that the jury would import a "reasonable person" standard into
23 | a criminal charge that requires a mens rea finding of knowledge or
24 | intent.

25 |     Additionally, Dr. Sullivan may not testify as to standards of
26 | care set out by a professional board or regulatory body, or as to
27 | other legal requirements not part of the criminal statute.  For
28 | example, Defendants attach as Exhibit C to their motions an opinion

3

by the California State Board of Pharmacy, stating that pharmacists have a "duty of inquiry" when they see "red flags."  (Dkt. No. 772, Ex. C.)  Failure to meet such standards does not subject a person to criminal culpability under the Controlled Substances Act, and introducing civil or regulatory standards has the strong potential to confuse to the jury as to the mens rea required in this case. Because the danger of such confusion substantially outweighs the probative value of a description of such standards, testimony as to such standards is excluded.  However, if the defense opens the door to the question of adherence to professional standards, the Government may then introduce evidence on such standards.

IT IS SO ORDERED.


Dated: October 8, 2014

DEAN D. PREGERSON
United States District Judge

4